**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Criminal Action No. 10-cr-00191-MSK
Civil Action No. 16-cv-01275-MSK**

**UNITED STATES OF AMERICA,**

      **Plaintiff-Respondent,**

**v.**

**PHILLIP MARTIN BENAVIDEZ,**

      **Defendant-Movant.**

---

**OPINION FOLLOWING ORAL ORDER SETTING ASIDE SENTENCE PURSUANT
TO 28 U.S.C. § 2255**

---

**THIS MATTER** comes before the Court on Phillip Benavidez's Motion to Vacate (**# 102**) his sentence in light of the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015). The Government filed a Response (**# 106**) and Mr. Benavidez Replied (**# 107**). Both parties filed Supplements (**# 109, # 110**) upon the Court's request. Following oral argument and consideration of the record, the Court issued an oral ruling, which it now explains in this written opinion.

## I. Factual Background

In March 2010, Mr. Benavidez was charged with violation of 18 U.S.C. § 922(g)(1) and subject to an enhanced sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924 ("ACCA"). He entered into a plea agreement admitting both charges in exchange for a stipulated sentence of 144 months of incarceration, which was submitted to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C).

1

The plea agreement contained a summary of Mr. Benavidez's criminal history, including three prior felony convictions necessary for application of an ACCA sentence enhancement. The plea agreement did not, however, identify which ACCA provision – that is, which definition of violent felony – applies to each conviction. The Court held a Rule 11 hearing, at which it deferred acceptance of the Plea until the sentencing hearing and until after consideration of the Presentence Report.

Prior to Mr. Benavidez's sentencing, the Court reviewed the presentence report and compared its contents (especially Mr. Benavidez's criminal history) to the information contained in the Plea Agreement. The Presentence Report included the three convictions supporting the ACCA enhancement. Two of the convictions were for serious controlled substance offenses. The third was a conviction of second degree burglary of a dwelling and attempt to commit second degree burglary of a building or occupied structure under Colorado law. The Presentence Report also did not specify which provision of ACCA made each conviction eligible, only that the requisite number of "violent felonies" were present. Satisfied that Mr. Benavidez had three prior violent felony convictions for purposes of an ACCA enhancement, and satisfied that the stipulated sentence was sufficient, but not greater than necessary, to serve the objectives of 18 U.S.C. § 3553(a), the Court accepted Mr. Benavidez's guilty plea. The Court sentenced Mr. Benavidez in accordance with the Plea Agreement, to the agreed sentence of 144 months of incarceration. At no time did the parties request, nor did the Court determine, under which provision of ACCA the prior convictions qualified as violent felony.

Mr. Benavidez brought this § 2255 Motion, seeking to vacate his sentence on the grounds that one of the three required ACCA crimes of violence was premised upon the residual clause in 18 U.S.C. §924(e)(2)(B)(ii) that was held  unconstitutional by the United States Supreme Court's

decision in *Johnson v. United States*, 135 S. Ct. 2556 (2015).  The parties agree that Mr.

Benavidez's two serious drug offenses are qualifying felonies under ACCA.  They dispute only

whether his Colorado second degree burglary of a dwelling conviction is a violent felony.

## II.     Analysis

ACCA defines a violent felony as:

"any crime punishable by imprisonment for a term exceeding one year ... that;

"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
"(ii) is **burglary, arson, or extortion, involves use of explosives**, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."  18 U.S.C. § 924(e)(2)(B)(ii).

The italicized language is known as the "residual clause."  The bolded language is known as the

"enumerated offenses clause."  In *Johnson*, the United States Supreme Court determined that the

language of the residual clause was unconstitutionally vague and therefore sentences relying on

that language violated a defendant's right to due process.  This holding became retroactive

through *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Mr. Benavidez contends that his second degree burglary conviction can no longer be

considered a violent felony because it falls only within the definition of the now-unconstitutional

residual clause.  If true, Mr. Benavidez lacks the three requisite violent felony convictions

necessary for the ACCA sentence enhancement, and his sentence must be set aside.

The Government agrees that the second degree burglary conviction would not be

countable if it was a violent felony based on the residual clause.  Initially, the Government

suggested that the second degree burglary conviction might qualify as a violent felony under the

enumerated offense  provision, which includes burglary.  But, after consideration of the Supreme

Court's  recent decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016), which ruled that a

burglary conviction based on an Iowa statute was not the equivalent of generic burglary under the enumerated offenses clause, the Government changed its position. The Government concedes that if the second degree burglary conviction were evaluated **today**, in light of *Mathis*, it would not constitute a violent felony under ACCA.

This does not end the controversy because the Government argues that there is a threshold question that the Court should address foremost, which could avoid the need to apply *Mathis*. That question is, what provision of ACCA did the sentencing Court (or parties) apply or intend to apply to the second degree burglary of a dwelling conviction at the time of Mr. Benavidez's sentencing? If the Court (and parties) relied on the residual clause in determining that the second degree burglary conviction was a violent felony under ACCA, then the sentence should be set aside. Conversely, if the Court (and parties) relied upon or "intended"[1] the second degree burglary of a dwelling conviction to be the equivalent of the enumerated offense of burglary, then the sentence was lawful at the time and should not be set aside.

Assuming for the sake of argument, that the "Court's intent" at the time of sentencing is the correct initial inquiry that should be examined on collateral review, the record in this case does not provide any answer or insight.[2] The parties stipulated to an ACCA enhanced sentence in their plea agreement, but they did not identify what ACCA provision applied to what prior convictions nor ask the Court to make such determination. The plea agreement was submitted under Fed. R. Crim. P. 11(c)(1)(C) and sought the Court's approval of a stipulated sentence. The Presentence Report (**# 81**) set forth Mr. Benavidez's criminal history, but did not identify the

---

[1]    At oral argument, the Court inquired as whether this was a question of whether *Mathis* should be retroactively applied, and if so, was there any authority for or against the proposition. Unaware of any authority on the issue, the Government demurred, and instead asked the Court to focus on what had occurred in conjunction with the sentencing.

[2]    Neither party has directed the Court to any portion of the record that reveals the "intent" of the parties or the Court.

pertinent provision of ACCA, and the Court made no specific findings as to what provision of ACCA applied.

Without this record evidence, the Government concedes that Mr. Benavidez's Colorado second degree burglary of a dwelling conviction does not qualify as a violent felony under either the residual clause (due to unconstitutionality) or the enumerated offenses clause (by application of the reasoning in *Mathis*). Were the Court asked to make this determination, it would agree.[3]

---

[3]   If the Court were called upon to analyze whether Mr. Benavidez's prior conviction for second degree burglary under Colorado law is the equivalent of burglary under ACCA's enumerated offences clause, it would find that it does not.

The ACCA's enumerated violent offenses are burglary, arson, extortion, and crimes involving the use of explosives. 18 U.S.C. § 924(e)(2)(B)(ii). Because the nomenclature of state laws varies, Courts must compare state statutes under which a prior conviction was entered to the generic enumerated crimes in order to determine whether they are equivalent. *Taylor v. United States*, 495 U.S. 575, 588 (1990); *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Descamps v. United States*, 133 S.Ct. 2276 (2013); *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016).

Most recently the United States Supreme Court revisited the methodology to be employed to such a determination in *Mathis*. When analyzing whether the elements of the crime of conviction are the same as the elements of the generic crime listed as an enumerated offense two analytical tools are used – the categorical approach and the modified categorical approach. When the offense of conviction is based on a statute defining a crime with a single set of elements, the categorical approach resolves the issue. The elements of the state statute under which the defendant was convicted are compared "side by side" to the elements of the generic offense. If the elements are the same – that is, the state statute criminalizes the same conduct (or conduct more narrow) than the generic crime – the conviction under the state statute equates to an ACCA enumerated offense. *Descamps v. United States*, 133 S.Ct. 2276 (2013); *Taylor v. United States*, 495 U.S. 575 (1990). Conversely, if the elements do not match, then the prior conviction is not considered an enumerated crime of violence under ACCA.

The modified categorical approach is used when there is more than a single set of elements upon which the offense of conviction could have been based, or there are various ways that a particular crime can be proven. A sentencing court must first discern if the multiple ways by which a crime can be proven are alternative elements or merely alternative means to commit a single element. If they are alternative means, and not all means criminalize the same conduct as that of the generic offense, the prior conviction cannot be considered an enumerated offense. On the other hand, if they are alternative elements, the Court must examine documents related to the prior conviction to determine under which elements it rests. If those elements under which the defendant was convicted criminalize the same conduct as that of the generic offense, it is an enumerated offense. If the Court cannot discern under which elements the defendant was

Thus, Mr. Benavidez's Motion to Vacate (# 102) is **GRANTED**.  Resentencing is scheduled for

October 18, 2016 at 1:30 pm.

      DATED this 13th day of October, 2016.

**BY THE COURT:**

_Marcia S. Krieger_
_____

---

convicted, the prior conviction can only be considered an enumerated offense if every set of
elements cover the same conduct as that of the generic offense.

      In *Mathis,* the offense of conviction was burglary under Iowa law. The Iowa statute (like
the Colorado statute) criminalized unlawful entry into "any building, structure, [or] land, water,
or air vehicle." The additional spaces upon which one could not intrude under the Iowa statute
were not alternative elements that resulted in distinct and separate crimes, but instead were
"alternative methods or means" by which the crime of burglary could be proved.  In contrast,
generic burglary requires proof of unlawful entry into only a "building or other structure."
Thus, the generic crime of burglary and the Iowa crime of burglary were not equivalent.  As the
Supreme Court explained, the Iowa crime of burglary covered a broader swath of conduct than
did the generic crime, and thus the Iowa burglary conviction was not a violent felony under the
enumerated offenses provision of ACCA.

      The modified approach is applicable here and results in the same outcome.  Mr.
Benavidez was convicted of second degree burglary of a dwelling in violation of Colo. Rev. Stat.
§ 18-4-203(2).  At the time of Mr. Benavidez's conviction, Colorado defined burglary as
"knowingly breaking and entering, or unlawfully entering into, or unlawfully remaining in, a
building or occupied structure with intent to commit a crime therein against a person or
property."  *See* 1999 Colo. Legis. Serv. Ch. 113 (HB 99-1304); C.R.S. § 18-4-203; *see also
United States v. Forrest*, 611 F.3d 908, 913 (8th Cir. 2010) (describing the 1986 Colorado
second-degree burglary offense).  Burglary of a "dwelling," was separately listed as a class 3
felony.  C.R.S. § 18-4-203(2)(a)  Conviction of this crime required proof that the space that Mr.
Benavidez entered was a "dwelling."  Colorado defined "dwelling" as "a *building* which is used,
intended to be used, or usually used by a person for habitation."  C.R.S. § 18-1-901.  Colorado
then defined  "building,"  as a "structure which has the capacity to contain, and is designed for
the shelter of, man, animals, or property, and includes a ship, trailer, sleeping car, airplane, or
other vehicle or place adapted for overnight accommodations of persons or animals."  C.R.S. §
18-4-101.  Thus, burglary of  a "dwelling" under Colorado law could be proven if a defendant
unlawfully entered or remained in a vehicle, airplane, tent, trailer, lean-to or other shelter (if that
is where a person lived or intended to live). This definition is broader than the generic definition
of "building or structure."   Thus, like the Iowa crime of burglary, Colorado's crime of burglary
of a dwelling prohibits a broader swath of conduct than does generic burglary.

Marcia S. Krieger
United States District Court